Chief Judge BAKER
delivered the opinion of the Court.
After the original military judge in the case recused himself, a general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of wrongful possession of child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006). The adjudged and approved sentence included confinement for two years, forfeiture of all pay and allowances, reduction to pay grade E-l, and a bad-conduct discharge. The United States Navy-Marine Corps Court of Criminal Appeals (CCA) affirmed. United States v. Salyer, No. NMCCA 201200145, 2012 CCA LEXIS 407, at *20, 2012 WL 5208620, at *8 (N.-M.Ct. Crim.App. Oct. 23, 2012) (unpublished). The granted issue poses the questions: Did the Government’s actions cause the recusal of the original military judge and did such actions amount to unlawful influence? If so, what remedy is warranted?[1]
We hold that the Government’s conduct raised some evidence of an appearance of unlawful influence. We further hold that the Government has not demonstrated beyond a reasonable doubt that the appearance of unlawful influence did not affect the findings or the sentence, and that dismissal of the charges with prejudice is appropriate under the circumstances of this case.
BACKGROUND
Appellant was initially charged with one specification of wrongful distribution of images of child pornography and one specification of wrongful possession of a laptop computer containing images of child pornography. See 2012 CCA LEXIS 407, 2012 WL 5208620. Both specifications alleged violations of 18 U.S.C. § 2252A (2006), under Article 134, UCMJ. Similarly, both specifications alleged conduct “prejudicial to good order and discipline or of a nature to bring discredit upon the armed forces.”[2] During an Article 39(a), UCMJ,[3] session on July 29, 2011, the accused was arraigned, and counsel and the military judge, Lieutenant Colonel (LtCol) Mori, announced their qualifications on the record.[4] A discovery and motions schedule was set and the session was adjourned. Between July 29 and November 7, two officers made appearances on the record as detailed trial counsel, Captain (Capt) Schweig, the military justice officer, and Capt Maya, who eventually acted as detailed trial counsel for the remainder of the court-martial.
At an Article 39(a) session on November 7, 2011, the Government moved to amend each specification by removing the references to 18 U.S.C. § 2252A and the language alleging conduct to the prejudice of good order and discipline. The motion was granted and each *418 specification now alleged a violation of clause 2 of Article 134, UCMJ. In addition, with respect to the possession specification, trial counsel moved to strike the reference to the laptop computer. It was apparent that the computer would be unavailable for trial. Defense counsel objected to this proposed amendment arguing that the defense had prepared its ease in reliance on the language referencing the computer. The military judge reserved his ruling on this issue.
The next relevant Article 39(a) session occurred on November 14, 2011. The military judge denied the Government’s motion to strike the specification’s reference to the laptop. The parties also addressed the potential maximum authorized punishment in the event the accused was convicted of both offenses. The military judge indicated that for the purpose of voir dire, he would inform the members that the maximum punishment was up to thirty years, but that the issue would be revisited after the findings were returned.
After this Article 39(a) session adjourned, voir dire was conducted, challenges were granted and the members were excused. Af-terwards, the military judge and the parties continued discussion on the record regarding potential rulings, including the definition of child pornography for an Article 134(2), UCMJ, offense. The Government argued that the term “minor” should be defined as a person under the age of eighteen. The defense argued that “minor” referred to a person under the age of sixteen. The following colloquy took place:
MJ: I am contemplating what is the age.
TC: Sir, according to the statute—
MJ: The statute is 18, right?
TC: Yes, sir.
MJ: Under the Uniform Code of Military Justice, what is the age of consent?
TC: Well, sir, if the court is going to go— this just refers to everything from the most applicable statute, child pornography refers to a minor.
MJ: That is right.
TC: [18 U.S.C. § 2256] has all of the definitions that relate to—
MJ: What is a minor under the Uniform Code of Military Justice?
DC: Under the age of 16, sir.
The military judge next addressed the apparent inconsistency of defining a minor as one under the age of eighteen for child pornography offenses charged under clause 1 or 2 of Article 134, UCMJ, given the age of consent in the military was sixteen.
MJ: Because our age of consent is 16. A Marine could have sexual intercourse with a 16 year old lawfully, right, but if he took a picture of it, that would be a crime. I don’t know. It may not matter .... That may be more of a case specific argument on why it wouldn’t be service discrediting ....
MJ: I am inclined to make the age under the age of 16.
TC: Sir, the government would argue that in this case because it is closely related to the statute that rather than picking and choosing from the manual or the statute, that we just stick with the statute.
MJ: But you didn’t charge him with violating the statute.
TC: Right, sir, but under [United States v. Leonard], you look to most closely—
MJ: —to determine the maximum punishment.
TC: Yes, sir.
This same hearing addressed the admissibility of Prosecution Exhibit (PE 5) (for identification), a one-page letter from Time Warner Cable in response to the Government’s subpoena. The letter states that Appellant’s wife, Danielle Salyer, was the owner of the Road Runner account and the IP address linked to the missing computer under which the offending images at issue had been downloaded. The defense objected on the ground that PE 5 was testimonial hearsay. Trial counsel argued the document was admissible as a business record. The military judge sustained the objection, without comment. Finally, the session turned to the definition of child pornography. With the issue still unresolved, the military judge indicated that *419 he would address the question the following morning.
The next morning, November 15, 2011, the Government requested that the military judge reconsider his ruling excluding PE 5. The military judge reconsidered the ruling, but after further argument, again sustained the objection to PE 5. Discussion then turned to a conversation between Appellant and his wife regarding the laptop referred to in the possession specification, during which Appellant told his wife, “it broke and he needed to get a new one.” The defense argued the statement was covered by the marital privilege. The Government argued the privilege did not apply because the communication took place during an Internet chat session over an unsecured computer, and because at the time of the communication Appellant and his wife were contemplating divorce. The Government also argued in the alternative that if the privilege applied, it was waived when Appellant later made the same statement to investigators. The military judge ruled that there was a confidential communication, but reserved judgment on the issue of waiver.
After a recess, the court returned to the definition of child pornography. The military judge handed the parties what had been marked as an appellate exhibit containing the definition he intended to use, stating “ ‘Minor’ means any real person under the age of sixteen years.”[5] The Government objected leading to the following colloquy:
TC: Sir, the government would still object to the use of 16. And the government is not sure why the Court is choosing 16 over 18 which' — if the rest of the definitions are coming from the statute, why the court would—
MJ: Because I am — I am applying the age of consent in the military.
TC: But the consent in the military isn’t at issue. It is not being charged that Corporal Salyer was chatting with any of these.
MJ: This is what I am using. I am using this.
TC: Yes, sir.
TC: Sir, the government would still argue that it is not a matter of whether these people — these victims consented.
MJ: What is consent? Do I have consented in there?
TC: No, but you discussed the age of consent is 16. You can’t consent to have your naked photograph taken. That is not what is at issue in this case.
MJ: Okay. Very well. I have already ruled so stop arguing about it.
TC: Yes, sir.
MJ: I explained my rationale; right?
TC: Yes, sir.
MJ: It is different because [you] charged it under [Article] 134, clause 1 or 2.
After the members returned, the military judge provided preliminary instructions, including the definition of child pornography, with minor defined as a “real person under the age of 16.” Trial counsel, Capt Maya, proceeded with her opening statement, making the following statement to the members regarding the actions of the investigator in the case:
But at this point all she had was that IP address. She didn’t know who was behind the IP address so she sent a subpoena off and she found out that this IP address was registered to a Danielle Salyer who lived at [address].
Emphasis added. This was an obvious reference to PE 5, which had been excluded. With apparent frustration, the military judge addressed trial counsel outside the presence of the members:
MJ: Stop, stop, stop. I specifically excluded that piece of evidence. How are you going to get it in?
TC: Effect on listener, sir. It is the reason — it is part of the investigation that is—
MJ: Okay, I am not going to allow that in.
*420 TC: But, it wouldn’t be for the truth of—
MJ: It is not coming in. That is a piece of evidence that ties the accused.
TC: And the government would be amenable—
MJ: No—
TC: —to a limiting instruction if we couldn’t get some sort of—
MJ: Well, it’s either going to be a mistrial if you don’t get it in somewhere else.
TC: Sir, the—
MJ: Just listen. That is my ruling. We aren’t going to address that.
TC: Yes, sir.
MJ: I’ve considered your argument on the effect on the listener and I am not allowing it.
After this ruling, the Court recessed. Capt Schweig, the military justice officer, later testified that he and unnamed others met and discussed the military judge’s ruling on the definition of a minor. According to Capt Schweig, Capt Maya told him of rumors that “Lieutenant Colonel Mori may have had a young wife.” This prompted Capt Schweig to access LtCol Mori’s official personnel record. According to Capt Schweig, this record indicated that LtCol Mori had been married for ten years and that his wife “was most likely 17 years old or maybe a little bit more at the time they were married.” Capt Schweig further testified that, “The sole basis was an attempt to determine if there was any possible source of bias inherent in the judge’s ruling.” According to this same testimony, having retrieved the information from LtCol Mori’s personnel record, Capt Schweig went to see LtCol Mannle, Officer-in-Charge (OIC) of the base Legal Services Center. They discussed the military judge’s decision to use age sixteen vice age eighteen to define a minor for purposes of the charged child pornography offenses.
LtCol Mannle testified that he was “perplexed” by the military judge’s decision. When Capt Schweig showed him the information from LtCol Mori’s personnel record, LtCol Mannle concluded that:
there was a relevant issue for the government that suggested bias on the part of the judge .... It struck me that this was a vital issue for voir dire, and, likely, a motion for recusal. And I thought that there was probably a better than likely chance that the judge would recuse himself.
LtCol Mannle then decided to call Captain Berger, the circuit military judge and LtCol Mori’s immediate supervisor. According to LtCol Mannle, he “owed the circuit judge a professional courtesy to let him know that a significant event was about to happen here.” However, LtCol Mannle later testified that the call with Captain Berger included discussion of the ruling on the age issue and the information regarding LtCol Mori’s wife:
I let him know that I was unsure about why it is the instruction had been given. And, again, I relayed to him the information that I had about the date — or the age at which Lieutenant Colonel Mori married his spouse — or her age at the time of the marriage. I articulated for him in my heads up what it is, why it is I thought that there was — there were grounds for voir dire of the judge.
When the parties returned on the record that afternoon, Capt Maya requested voir dire of the military judge. Among other things, she asked the military judge how old his wife was when they married. The military judge answered that his wife was seventeen. At this point, Capt Maya offered the excerpt from the military judge’s official personnel file as an appellate exhibit for the record. Trial counsel then moved to disqualify the military judge for actual and implied bias stating:
TC: Specifically, the reason is because the military judge instructed the court over a government objection that the definition of a minor is any individual under the age of 16. This is in direct conflict with the plain language of the United States Code Statute that is most closely analogous under United States v. Leonard. Consequently, the government questions the military judge’s impartiality to make rulings on this instruction.
*421 MJ: Okay.
TC: And the government also believes that a reasonable member of the public with knowledge that these facts and circumstances would also question the impartiality of the tribunal in this case.
MJ: Okay. Any other basis?
TC: That is it, sir.
The military judge put the court in recess indicating that he would return with a ruling on the motion.
The following morning, November 16, 2011, the military judge convened an Article 39(a) session and informed the parties of a conversation he had with Captain Berger the previous day:
MJ: Okay. So during our lunch recess yesterday ... I called Captain Berger to speak to him about an eviden-tiary issue in this case that I had yet to rule on. Captain Berger inquired [of] me what was going on with some age issue in the ease that I was hearing, as he had heard by Lieutenant Colonel Mannle, the SJA for Marine Corps Base Hawaii and the OIC of the law center who had been sitting in during the proceedings for some of the sessions, that Lieutenant Colonel Mannle was not happy with my ruling that I was defining a minor as a person under the age 16. And he indicated the government was going to seek my recusal based on my wife being 17 when I married her. So I disclosed that to both sides.
Trial counsel responded by asking the military judge several additional questions:
TC: Sir, did the — the circuit judge express his displeasure in any of your decisions?
MJ: I would say I interpreted his questioning of me to raise concern with my performance.
TC: And, sir, an additional voir dire question.
MJ: Yes.
TC: Previously have you disqualified any of the trial counsel on any other case?
MJ: Have I ever disqualified a trial counsel?
TC: Yes, sir.
MJ: Not that I recall. I think there was a potential issue, a potential remedy potentially on one case ... but I can’t recall.
TC: United States versus Lauer, sir.
TC: All the trial counsel and the military justice officer.
MJ: Oh, yes, that’s right ....
TC: But that was something you had done in the past was disqualify—
MJ: Okay.
TC: And myself, specifically.
MJ: Okay. Any other questions?
The court recessed. Later that afternoon the military judge convened another Article 39(a) session. He announced that he was disqualifying himself from the ease and attached his written ruling to the record. The ruling cites LtCol Mannle’s phone call to Captain Berger and the trial counsel’s reference to his wife’s age at the time of their marriage. LtCol Mori’s ruling also addressed the propriety of LtCol Mannle’s call to Captain Berger:
This court finds that a reasonable person would question the [impartiality] of the military judge on any decision in further proceedings in the case under these facts .... These types of questions are reasonable even from a person[] who knows all the facts. Included in those known facts are the appropriate means for members of the prosecution to address disagreements or concerns with a military judge’s ruling. The appropriate means are to seek disqualification, if raised, seek reconsideration of a military judge’s ruling or to file an interlocutory appeal; having the trial counsel’s supervisor call the military judge’s supervisor during trial is not contemplated in the rules for courts-martial. The fact that an inappropriate method for address *422 ing a disagreement with the military-judge’s ruling was employed during the merits of the court-martial weighs in favor of a finding[] that a reasonable person might question the military judge’s impartiality.
LtCol Mori concluded his ruling as follows:
Any ruling made by the [military] judge against or for either side might reasonably be questioned, “Is the judge ruling in favor of the prosecution so [as to] avoid any more complaints to his boss?” or “Is the military judge ruling in favor of the defense to retaliate against the prosecution for their improper complaint to the circuit military judge?”
With respect to the prosecution’s references to his wife, the military judge continued:
The court finds that this is also a basis for disqualification under the objective standard; not due to the fact of the military judge’s wife’s age, but due to the fact that the prosecution raised an issue involving a personal family matter of the military judge which was also raised with the military judge’s supervisor as part of the complaint. Even though it is almost ten years and three children later, it is in relation to a personal family matter which might cause a reasonable person to question the military judge[’]s [impartiality].
Colonel (Col) Richardson replaced LtCol Mori as military judge the following morning. At the Government’s request, Col Richardson addressed a motion to reconsider LtCol Mori’s rulings on the age of a minor and marital privilege concerning Appellant’s statement to his wife regarding the missing computer. On the definition of a minor, Col Richardson ruled that he was not going to reconsider any of LtCol Mori’s rulings that could be characterized as “defense friendly.” Notwithstanding this statement, Col Richardson reconsidered LtCol Mori’s prior ruling that Appellant’s statement to his wife regarding the laptop was a confidential communication. After hearing evidence and arguments, he ruled that while some parts of the conversation were privileged, the communication regarding the destruction of the computer was not intended to be confidential and therefore, was not privileged.
Col Richardson also addressed a defense motion to dismiss for unlawful command influence. During the hearing on the motion, Col Richardson heard testimony from LtCol Mannle and Capt Schweig. After hearing from LtCol Mannle, Col Richardson excused him stating, “Given the fact that you are now a percipient witness ... I’m going to direct that you cannot come back into the courtroom for the remainder of these proceedings.” Ultimately, Col Richardson concluded that LtCol Mannle’s call to Captain Berger was “well intentioned,” but nonetheless raised the appearance of unlawful influence.[6]
Regarding the intrusion into the military judge’s personnel record and the subsequent voir dire into LtCol Mori’s -wife’s age, Col Richardson found neither actual nor apparent unlawful influence regarding trial counsel’s actions. He concluded that “[t]he MJ’s statistically anomalous personal situation in this regard, vis-a-vis his sua sponte raising the age issue and then ruling quickly and curtly in the defense’s favor was a perfectly valid basis for the Government to voir dire and challenge the MJ” and, that “the Government was well within [its] rights based on these facts to inquire into the matter.”
Col Richardson’s remedy for the apparent unlawful influence he found was his earlier statement that he would not reconsider any of LtCol Mori’s “defense friendly” rulings. While considering potential remedies for the finding of apparent unlawful influence, Col Richardson referred to his earlier exclusion of LtCol Mannle from the courtroom stating:
I only have several remedies available to me in UCI. I can dismiss it outright, I cannot allow Lieutenant Colonel Mannle back into the courtroom — which we’ve already done anyway — or I can ensure that, as a result of what’s happened here, that the accused is not placed in any worse position than he possibly could have been *423 had Lieutenant Colonel Mori continued with this trial.
DISCUSSION
I.
Article 37, UCMJ,[7] states “No person subject to [the UCMJ] may attempt to coerce or, by any unauthorized means, influence the action of a court-martial ... or any member thereof ....” While statutory in form, the prohibition can also raise due process concerns, where for example unlawful influence undermines a defendant’s right to a fair trial or the opportunity to put on a defense.
Allegations of unlawful command influence are reviewed de novo. United States v. Harvey, 64 M.J. 13, 19 (C.A.A.F.2006); United States v. Villareal, 52 M.J. 27, 30 (C.A.A.F.1999); United States v. Wallace, 39 M.J. 284, 286 (C.M.A.1994). On appeal, the accused bears the initial burden of raising unlawful command influence. Appellant must show: (1) facts, which if true, constitute unlawful command influence; (2) that the proceedings were unfair; and (3) that the unlawful command influence was the cause of the unfairness. United States v. Richter, 51 M.J. 213, 224 (C.A.A.F.1999) (quoting Biagase, 50 M.J. at 143, 150 (C.A.A.F.1999)). Thus, the initial burden of showing potential unlawful command influence is low, but is more than mere allegation or speculation. United States v. Stoneman, 57 M.J. 35, 41 (C.A.A.F.2002). The quantum of evidence required to raise unlawful command influence is “some evidence.” Stoneman, 57 M.J. at 41 (quoting Biagase, 50 M.J. at 150) (internal quotation marks omitted).
Once an issue of unlawful command influence is raised by some evidence, the burden shifts to the government to rebut an allegation of unlawful command influence by persuading the Court beyond a reasonable doubt that (1) the predicate facts do not exist; (2) the facts do not constitute unlawful command influence; or (3) the unlawful command influence did not affect the findings or sentence. Biagase, 50 M.J. at 151.
Allegations of unlawful command influence are reviewed for actual unlawful command influence as well the appearance of unlawful command influence. “Even if there was no actual unlawful command influence, there may be a question whether the influence of command placed an ‘intolerable strain on public perception of the military justice system.’ ” United States v. Lewis, 63 M.J. 405, 415 (C.A.A.F.2006) (citation and internal quotation marks omitted); Stoneman, 57 M.J. at 42-43 (quoting United States v. Wiesen, 56 M.J. 172, 175 (C.A.A.F.2001)). The test for the appearance of unlawful influence is objective. “We focus upon the perception of fairness in the military justice system as viewed through the eyes of a reasonable member of the public.” Lewis, 63 M.J. at 415. An appearance of unlawful command influence arises “where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding.” Id.
In this ease, the CCA upheld Col Richardson’s conclusion that the call to Captain Berger raised the appearance of unlawful influence, but not actual unlawful influence. Salyer, 2012 CCA LEXIS 407, at *15, 2012 WL 5208620, at *6 (unpublished). The CCA further concluded, as Col Richardson did, that the voir dire of LtCol Mori raised neither actual unlawful influence nor an appearance of unlawful influence. 2012 CCA LEXIS 407, at *18, 2012 WL 5208620, at *7. The CCA specifically concluded that there was “a good faith basis to inquire into the military judge’s personal life.” 2012 CCA LEXIS 407, at *16, 2012 WL 5208620, at *6. Here, the fact is undisputed that, in the words of the CCA, “LtCol MDM did marry a 17-year-old woman. The Government had verified this fact before commencing its voir dire into how that fact might have influenced LtCol MDM’s pretrial ruling on the definition of a minor.” 2012 CCA LEXIS 407, at *16, 2012 WL 5208620, at *6.
Reviewing the ease de novo, we disagree with the lower court’s analysis, reasoning, *424 and conclusion regarding the appearance of unlawful command influence.
II.
Our review of unlawful influence in a given case is not limited to actual influence. Lewis, 63 M.J. at 415. This Court is concerned not only with eliminating actual unlawful influence, but also with “eliminating even the appearance of unlawful command influence at courts-martial.” United States v. Rosser, 6 M.J. 267, 271 (C.M.A.1979).[8] Our analysis begins by again taking notice, as we did in Lewis, that military judges in the Navy and Marine Corps trial judiciary are selected by the Judge Advocate General of the Navy:
Authority to detail military judges has been delegated to service secretaries. Article 26(a), UCMJ, 10 U.S.C. § 826(a) (2000). The Secretary of the Navy has further delegated that authority to the Judge Advocate General who has prescribed that military judges will be detailed by and from a standing judiciary. See Dep’t of the Navy, Judge Advocate General Instr. 5800.7D, Manual of the Judge Advocate General (JAGMAN) para. 0130a.(l) (Mar. 15, 2004); Dep’t of the Navy, Judge Advocate General Instr. 5813.4G, Navy-Marine Corps Trial Judiciary para. 6 (Feb. 10, 2006). In addition, military judges of general courts-martial are “designated by” and “directly responsible to” the Judge Advocate General of the service.
Lewis, 63 M.J. at 413-14.
The Judge Advocate General’s (JAG) regulations indicate that the selection and certifl-cation of a military judge is based on “governing criteria.” Dep’t of the Navy, Judge Advocate General Instr. 5813.41, Navy-Marine Corps Trial Judiciary para. 5.b.(l) (Sept. 9, 2011) [hereinafter JAGINST 5813.4I].[9] In appointing a military judge, the JAG acknowledges that the individual meets these criteria and is fit for office. Individual military trial judges in the Marine Corps subsequently report to circuit trial judges who evaluate their performance and assign their cases. Id. at para. 4.d. Military judges do not serve terms of office, but rather, generally serve unless or until an appropriate reason for reassignment arises. Id. at paras. 5.a., 5.b. As a result:
Neither the government nor the defense at a court-martial is vested with the power to designate, detail, or select the military judge. Conversely, neither party can usurp the authority of the service secretaries or Judge Advocates General by removing or unseating properly certified and detailed military judges.
Lewis, 63 M.J. at 414.
We also note again, as we did in Lewis, that a military judge “shall perform the duties of judicial office impartially and fairly.” Id. (citation and internal quotation marks omitted). Toward this end, a military judge, like other judges, is required to affirmatively recuse himself, sua sponte, from a case where there is a ground for disqualification. Rule for Courts-Martial (R.C.M.) 902(b). Both parties to the trial are also “permitted to question the military judge and to present evidence regarding a possible ground for disqualification.” R.C.M. 902(d)(2).[10] This rule lists possible grounds *425 for disqualification including “personal bias” on the part of a military judge. However, where there is evidence in the record of an effort to unseat a military judge based on the trial counsel’s animosity toward the military judge, to secure a more favorable ruling, or to cause the assignment of an alternative military judge, where the presiding military judge is otherwise qualified to serve, an appearance of unlawful command influence is raised. See Lewis, 63 M.J. at 414.
Six facts of record considered together raise some evidence of the appearance of unlawful influence in this case. First, the military judge made a number of rulings adverse to the Government as set out earlier in this opinion. One of these rulings dealt with the age definition of a minor for the purpose of defining child pornography charged under Article 134(2), UCMJ. The Government chose to charge the allegations as military offenses under Article 134, clause 2, UCMJ, by removing specific references to Title 18. Moreover, the original specifications in this case do not allege any specific number of images possessed or distributed. Thus, at most, the prosecution was required to prove possession and distribution of at least two images relevant to each specification. Prosecution Exhibit 1 (PE 1) is a compact disc containing forty-three images. Prosecution Exhibit 2 (PE 2) appears to be twenty or so printed images, presumably representative of the forty-three images on PE 1. Although it might be reasonably debated whether some of the subjects in the images contained in PE 2 are under the age of eighteen, eight to ten of these images depict subjects who are clearly under sixteen, and some appear to be under the age of ten. Thus, the military judge’s ruling that a minor would be defined as a person under the age of sixteen does not itself appear so critical as to explain the Government’s extraordinary efforts to seek recusal.
Second, in response to what is described by the Government and the CCA as a rumor conveyed by trial counsel, the military justice officer obtained access to the military judge’s official personnel file to determine the age of the military judge’s wife at the time she married the military judge. This marriage occurred ten years prior to Appellant’s trial. Trial counsel made no logical nexus between the wife’s age at marriage and the ruling regarding the age of a minor. Further, there is a considerable difference between marrying a seventeen-year-old, an act sanctioned by law, and possession of child pornography. The CCA found that the convening authority and his staff judge advocate were not aware of, and thus, did not direct, the actions in this case. 2012 CCA LEXIS 407, at *15-*16, 2012 WL 5208620, at *6. Albeit not members of the convening authority’s command, the OIC of the law center and the trial counsel were, however, representatives of the Government.
Third, the OIC telephoned the circuit trial judge to alert him that the Government would seek disqualification of the military judge in Appellant’s court-martial. This call was characterized by Col Richardson as a well-intended courtesy call.[11] However, in *426 the course of this conversation the OIC also conveyed his dissatisfaction with the military judge’s ruling on the age issue, and this call occurred during an ongoing court-martial. The circuit trial judge was the judicial supervisor of the military judge hearing Appellant’s case at the time the call was made.
Fourth, trial counsel used the personal information from the military judge’s official personnel file in support of a motion to disqualify the military judge on the ground of actual and implied bias.
Fifth, in the course of arguing this motion, trial counsel asked the military judge whether he had ever disqualified any trial counsel in any case. The military judge answered, “Not that I recall.” Trial counsel then raised a specific court-martial unrelated to Appellant’s in which the sitting military judge had disqualified the same trial counsel appearing in this case.
Sixth, the military judge removed himself from the case for two reasons. First, the military judge found that a reasonable person would question his impartiality because of the OIC’s call complaining to the military judge’s reporting senior. Second, the military judge also found that a basis for disqualification arose “due to the fact that the prosecution raised an issue involving a personal family matter ... which was also raised with the military judge’s supervisor as part of the complaint.”
The analysis of the lower court fails to address two essential points. First, while the Government, like the defense, is “permitted to question the military judge ... regarding a possible ground for disqualification,” it is the manner in which and the means by which the Government went about doing so that raises the appearance of unlawful command influence, not the fact of inquiry. R.C.M. 902(d)(2). The normative method for addressing potential issues of disqualification is voir dire. R.C.M. 902 provides the substantive framework and R.C.M. 802 provides a procedural vehicle. Accessing a military judge’s official personnel file to verify rumors regarding his family is not a normative method for testing and validating the impartiality of a military judge; it is not sanctioned by the UCMJ. Thus, even if one assumes and accepts the replacement military judge’s finding of good faith for inquiring into the first military judge’s background, a good-faith basis of inquiry under R.C.M. 902 does not create a correlating good-faith basis to access a military judge’s official personnel file without his consent in search of personal matters with which to question and challenge the military judge. Such access, were it condoned by appellate courts, would strike at the heart and soul of an independent military judiciary.
Second, the normative method for challenging a military judge’s legal ruling is to seek an appeal of that ruling. This might be done on an interlocutory basis, and generally the appeal will be given precedence by the CCA and by this Court. See generally Article 62(b), UCMJ, 10 U.S.C. § 862(b) (2006).[12] The normative method for addressing a military judge’s substantive ruling is not to seek a military judge’s disqualification and get a new ruling from a replacement military judge. And, it is not to have the Government communicate in an ex parte manner with the military judge’s judicial supervisor and express displeasure with the ruling.
The appearance of unlawful influence is raised because the Government used its custody of the military judge’s official personnel file to search that personnel file to find personal family information for the purpose of challenging the military judge for bias. Further, the Government expressed its displeasure with the military judge’s rulings not only on the record but in an ex parte manner to the trial judge’s judicial supervisor during the pendency of the court-martial and while the military judge was still presiding. Trial counsel stated that these actions were taken in response to the military judge’s ruling on the age of a minor for an Article 134, UCMJ, child pornography charge. However, this is *427 sue was not central to the Appellant’s case as there appears to have been ample evidence for the prosecution to proceed regarding the images at issue and the Government did not attempt to appeal the ruling on an interlocutory basis. More importantly, the Government at trial and on appeal failed to indicate how and why the military judge’s lawful marriage ten years earlier was relevant to the substantive validity of his ruling on the age issue.[13]
Thus, there is the appearance in this record that the Government sought, through inappropriate means, disqualification of the military judge because it did not agree with the military judge’s ruling. An objective, disinterested observer, fully informed of these facts and circumstances, might well be left with the impression that the prosecution in a military trial has the power to manipulate which military judge presides in a given case depending on whether the military judge is viewed as favorable or unfavorable to the prosecution’s cause based on the Government’s access to a military judge’s personnel file and through access to the military judge’s chain of command. This, in our view, would foster the “intolerable strain on public perception” of the military justice system which the proscription against unlawful command influence and this Court guard against.
III.
Having found an appearance of unlawful command influence, we now test for prejudice. This question hinges in part on whether the remedial measures taken by the replacement military judge were sufficient to cleanse Appellant’s trial of any effect from the Government’s conduct in the course of causing the disqualification of the original trial judge.[14] However the ultimate question is whether the Government has convinced us beyond a reasonable doubt that “the disinterested public would now believe that [Appellant] received a trial free from the effects of unlawful command influence.” Lewis, 63 M. J. at 415.
Col Richardson indicated he would let stand any prior rulings characterized as “defense friendly.” Although it is unclear whether Col Richardson also considered his exclusion of LtCol Mannle as part of the remedy for the finding of apparent unlawful influence, Appellant, nonetheless, argues that Col Richardson could have done more by excluding LtCol Mannle and trial counsel from any further participation in Appellant’s court-martial.
A sometime problem with an effeets-based prejudice test is that one cannot ultimately know what would have happened differently had the original military judge remained on the case. All change has some effect. What we do know is the first military judge left open his ruling on the marital privilege issue. He found the privilege applied, but he had not yet ruled on the waiver issue.
We are not convinced beyond a reasonable doubt that the Government has met its burden of demonstrating this case proceeded free from the appearance of unlawful influence. Assuming for the sake of argument that the exclusion of LtCol Mannle from the courtroom can be considered part of Col Richardson’s remedial effort, it had uncertain effect since the trial counsel, over whom LtCol Mannle continued to exercise supervisory authority, remained on the ease. Neither is it clear whether LtCol Mannle, who was now a witness in the case, was barred from participating further in the proceedings from outside the courtroom. The CCA appears to have found that he was barred *428 “from any further participation in the proceedings.” 2012 CCA LEXIS 407, at *19, 2012 WL 5208620, at *7. However, the military judge never stated that he was precluded from participating outside the courtroom — only that he was barred from the courtroom. Here, the burden is important; we do not know whether LtCol Mannle played any further role in advising on the case, which is a consideration the Government, under Biagase, carried the burden to address on appeal.
Secondly, Col Richardson’s ruling on the marital privilege issue was at best inconsistent with his earlier decision to not reconsider any previous “defense friendly” rulings made by the original military judge. Unlike the first military judge, the replacement military judge found that the marital privilege did not apply to the communications in question. We cannot know how the first military judge would ultimately have ruled, but we do know that the replacement military judge ruled against Appellant on this issue.
As a result, an objective member of the public would be left with the appearance and the impression that the Government obtained advantage from its actions — a new military judge and a more favorable ruling on privilege. Moreover, the same persons who had accessed the military judge’s official file and made ex parte contact with the first military judge’s supervisor were not barred from further participation in the case. Based on these facts the Government has not met its burden beyond a reasonable doubt of demonstrating that the appearance of unlawful influence was fully ameliorated in this case.
IV.
We turn now to the question of remedy. Appellant cites Lewis in arguing for dismissal with prejudice. The Government argues, as the CCA concluded, that dismissal with prejudice would be too harsh a remedy.
As in Lewis, the unprofessional actions of the Government improperly succeeded in getting the military judge to recuse himself from Appellant’s court martial. 63 M.J. at 412. Whether the Government’s primaiy motive was to remove a properly detailed military judge from the case through inappropriate means or not, it had that effect. Were we to authorize a rehearing, the Government would obtain the result it sought to obtain through inappropriate means — a trial with a different military judge. Thus, any remedy short of dismissal at this stage would effectively validate the Government’s actions. In addition, a rehearing as a remedy would occur over two-and-a-half years after Appellant’s original court-martial. Appellant had a right to a timely trial before a military judge who had been properly detailed to hear the case. Through no fault of his own, Appellant was denied this right as a result of the Government’s inappropriate actions causing the disqualification of a military judge.[15] Finally, the actions at issue strike at the heart of what it means to have an independent military judiciary and indeed a credible military justice system. Consequently, on the specific facts of this case, setting aside the finding and sentence to allow a retrial would leave Appellant where the appellant in Lewis found himself, “from an objective standpoint, the Government has accomplished its desired end and suffered no detriment or sanction for its actions.” Id. at 416.
DECISION
The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed. The finding of guilty and the sentence are dismissed with prejudice. The record of trial is returned to the Judge Advocate General of the Navy.

. The granted issue is:
UNDER UNITED STATES v. LEWIS, 63 M.J. 405 (C.A.A.F.2006), A CASE IS DISMISSED WITH PREJUDICE WHEN UNLAWFUL COMMAND INFLUENCE RESULTS IN THE RECUSAL OF A MILITARY JUDGE. HERE, THE MILITARY JUDGE RECUSED HIMSELF BECAUSE HE FOUND THAT THE GOVERNMENT’S ACTIONS MADE IT IMPOSSIBLE FOR HIM TO REMAIN ON THE CASE. THE GOVERNMENT COMPLAINED TO HIS SUPERVISOR ABOUT A RULING, ACCESSED HIS SERVICE RECORD WITHOUT PERMISSION, AND WITH THIS INFORMATION, MOVED FOR HIS RECUSAL. SHOULD THIS CASE BE DISMISSED WITH PREJUDICE?

. The specification under the Charge alleged: "In that Corporal Joseph B. Salyer ... did ... knowingly and wrongfully distribute images of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A), which conduct was prejudicial to good order and discipline or of a nature to bring discredit upon the armed forces.”
The specification under the Additional Charge alleged: “In that Corporal Joseph B. Salyer ... did ... knowingly and wrongfully possess a laptop computer containing image files of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), which conduct was prejudicial to good order and discipline or of a nature to bring discredit upon the armed forces.”

. 10 U.S.C. § 839(a) (2006) [hereinafter Article 39(a) session].

. Captain Milton was the detailed trial counsel for this session.

. This document is simply an untitled sheet of paper containing the military judge’s definitions.

. The replacement military judge, Col Richardson, specifically found that, "Such a courtesy call is widely accepted practice in the military, especially when dealing with such a sensitive topic involving a high ranking officer.”

. 10 U.S.C. § 837 (2006).

. As a threshold matter, we reject the Government’s argument that the law of the case doctrine limits our review to simply whether Col Richardson took sufficient steps to cure the apparent unlawful command influence from the OIC's phone call. Brief for Appellee at 13, United States v. Salyer, No. 13-0186 (C.A.A.F. Mar. 21, 2013). In our view, the granted issue covers all of the Government's conduct surrounding the phone call and the motion to recuse, including the retrieval of the military judge’s personal information and the subsequent voir dire. Furthermore, Appellant’s position at trial and in the lower court included the complete range of conduct and issues leading to the recusal of the original military judge.

. Navy and Marine Corps judicial nominees are recommended for appointment by the Judicial Screening Board. JAGINST 5813.41, at para. 5.b.(l).

. Possible grounds for disqualification include:
(1) Where the military judge has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding.
(2) Where the military judge has acted as counsel, investigating officer, legal officer. *425 staff judge advocate, or convening authority as to any offense charged or in the same case generally.
(3) Where the military judge has been or will be a witness in the same case, is the accuser, has forwarded charges in the case with a personal recommendation as to disposition, or, except in the performance of duties as a military judge in a previous trial of the same or related case, has expressed an opinion concerning the guilt or innocence of the accused.
(4) Where the military judge is not eligible to act because the military judge is not qualified under R.C.M. 502(c) or not detailed under R.C.M. 503(b).
(5)Where the military judge, the military judge's spouse[:]
(A) Is a party to the proceeding;
(B) Is known by the military judge to have an interest, financial or otherwise, that could be substantially affected by the outcome of the proceeding; or
(C) Is to the military judge’s knowledge likely to be a material witness in the proceeding.
R.C.M. 902(b).

. Whether this conclusion is most appropriately cast as a finding of fact or a conclusion ultimately does not matter. Accepting the accuracy of the conclusion, the fact remains that the OIC made the call during an ongoing court-martial and took issue with the military judge's ruling in the process.

. However, we make no judgments as to whether such an appeal would have satisfied the requirements of Article 62(b), UCMJ, or as to the potential success or failure of such an appeal in this case.

. Regarding LtCol Mori’s marriage, the replacement military judge stated on the record that, "I don’t know that marrying a 17-year-old woman could affect somebody’s career in any way, shape, or form. And I don’t believe that that is a proper consideration. It was a legal marriage." Furthermore, the issue of the age of a minor for the purpose of defining child pornography under clauses 1 or 2 of Article 134, UCMJ, is an open legal question that has yet to be resolved by this Court.

. As noted earlier, the Government's position in this Court is that the granted issue limits our consideration to the finding by Col Richardson and the court below that LtCol Mannle's call to Captain Berger raised the appearance of unlawful influence. The Government concedes that such an appearance is raised and argues only that this appearance of unlawful influence had no prejudicial impact on the court-martial.

. We do not suggest that Appellant had a right to this or any other individual military judge, but he did have a right to have the military judge detailed to the case be free from inappropriate attempts to remove him.