# UNITED STATES NAVY–MARINE CORPS
# COURT OF CRIMINAL APPEALS

_____

### No. 201700043

_____

### UNITED STATES OF AMERICA
Appellee

v.

### JAMES R. FREEMAN
Chief Fire Control Technician (E-7), U.S. Navy
Appellant

_____

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Captain Franklin J. Foil, JAGC, USN.
Convening Authority: Commander, Navy Region Mid-Atlantic,
Norfolk, VA.
Staff Judge Advocate's Recommendation: Lieutenant Commander
A.P. Shaw, JAGC, USN. Addendum: Commander Irve C. Lemoyne,
JAGC, USN.
For Appellant: Commander Donald R. Ostrom, JAGC, USN.
For Appellee: Lieutenant Clayton S. McCarl, JAGC, USN;
Lieutenant Megan P. Marinos, JAGC, USN

_____

Decided 28 February 2018

_____

Before GLASER-ALLEN, MARKS, and SAYEGH, _Appellate Military Judges_

_____

**This opinion does not serve as binding precedent but may be cited as
persuasive authority under NMCCA Rule of Practice and Procedure
18.2.**

_____

SAYEGH, Judge:

At a general court-martial, a panel of officers convicted the appellant,
contrary to his pleas, of sexual abuse of a child and indecent exposure, in
violation of Articles 120b and 120c, Uniform Code of Military Justice,

(UCMJ), 10 U.S.C. §§ 920b, 920c (2012).[1] The members sentenced the appellant to eight months of confinement, reduction to pay grade E-1, forfeiture of all pay and allowances, and a dishonorable discharge. The convening authority approved the sentence as adjudged and, except for the punitive discharge, ordered the sentence executed.[2]

In his sole assignment of error, the appellant contends the military judge abused his discretion by not finding apparent unlawful command influence (UCI) when the appellant's command changed their initial disposition decision from administrative action to judicial action after receiving a letter and video of the conduct at issue from the victim's father.

After careful consideration of the record of trial and the parties' pleadings, we are satisfied that the findings and sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The appellant and Mr. K.H. were neighbors whose yards were separated by a four-foot chain link fence. Mr. K.H. was married and lived with his wife, son, and 12-year old daughter, Z.H. After receiving multiple reports from his wife and Z.H. that the appellant would expose himself to them, Mr. K.H. spoke informally to a local police officer. The officer advised Mr. K.H. to get video proof before making a report to local authorities. On 13 November 2014, Mr. K.H. instructed Z.H. to play in their backyard so he could record the appellant with a video camera. While Mr. K.H. hid from view, he recorded the appellant exposing and touching himself in full view of Z.H. The appellant initially appeared on his driveway in uniform with his genitals exposed and within full view of Z.H. who observed the appellant and his exposed genitals as she played in her backyard. After retreating inside his home, the appellant reappeared minutes later in his backyard completely naked and in full view of Z.H., who was still playing in her backyard. The appellant can be seen on the video looking towards Z.H. while masturbating.

Mr. K.H. presented the video and made a report to the Rhode Island State Police, who arrested the appellant on 15 November 2014. The state police informed the Naval Criminal Investigative Service (NCIS) of the appellant's arrest the next day. On 23 September 2015, the appellant pled "nolo contendere" in Rhode Island Superior Court to a charge of indecent

---

[1] The members found the appellant not guilty of sexual abuse of a child for exposing his genitalia, under Article 120b, UCMJ, 10 U.S.C. § 920b (2012).

[2] The convening authority waived both adjudged and automatic forfeitures for six months pursuant to Article 58b(2)(b), UCMJ.

exposure/disorderly conduct.[3] He was convicted and sentenced to supervised probation for one year and mandatory substance abuse counseling. The court also ordered that he have no contact with Z.H.

Upon learning of the appellant's conviction and sentencing, the appellant's command notified NCIS that no further criminal action would be taken. Instead, the command decided they would not recommend the appellant for advancement, which would force him to retire in November 2017. NCIS closed its investigation and notified Mr. K.H. of the appellant's command's decision.

In October 2015, Mr. K.H. sent identical letters to both the appellant's command and the commanding officer of the base where the appellant worked. The letter expressed dissatisfaction with the Navy's decision not to charge the appellant. Along with the letter, Mr. K.H. also sent a copy of the video of the appellant exposing and touching himself to both commanders. After receiving the letter and the video, the appellant's command reversed its initial decision and decided to take the appellant to court-martial.

The defense filed a motion to dismiss for actual and apparent UCI alleging that Mr. K.H.'s letter and video—when combined with the existing political climate surrounding sexual offenses in the military—improperly influenced the appellant's command to change their original disposition decision which would have allowed him to retire. The military judge denied the motion.[4]

## II. DISCUSSION

It has long been a canon of military jurisprudence that UCI is the mortal enemy of military justice.[5] The prohibition against UCI is codified in Article 37, UCMJ, which states in part, "[n]o person subject to this chapter may attempt to coerce or . . . influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening . . . authority with respect to his judicial acts." UCI can be actual or apparent, and we review allegations of UCI *de novo*.[6]

At the outset, we look for facts which, if true, would constitute actual UCI.[7] We conclude that, except for Mr. K.H., a military retiree, there are no

---

[3] 11 R.I. Gen. Laws § 45-2 (Indecent exposure – Disorderly conduct).

[4] Appellate Exhibit (AE) XXXVI.

[5] *United States v. Thomas*, 22 M.J. 388, 393 (C.M.A. 1986).

[6] *United States v. Salyer*, 72 M.J. 415, 423–24 (C.A.A.F. 2013).

[7] *United States v. Biagase,* 50 M.J. 143, 150 (C.A.A.F. 1999).

facts or evidence to suggest that anyone acting with the "mantle of command authority" attempted to violate Article 37, UCMJ, by unlawfully influencing the convening authority, the military judge, or the panel members in this case.[8] "[T]here is a distinction between influence that is private in nature and influence that carries with it the mantle of official command authority."[9] Therefore we find no actual UCI, and, consistent with the appellant's assignment of error, we will focus our analysis on apparent UCI. Unlike actual UCI, which requires prejudice to the accused, "no such showing is required for a meritorious claim of an appearance of unlawful command influence. Rather, the prejudice involved . . . is the damage to the public's perception of the fairness of the military justice system as a whole[.]"[10]

In *United States v. Boyce*, the Court of Appeals for the Armed Forces used a two-pronged test for apparent UCI.[11] To prevail, the appellant must first show facts which, if true, would constitute some evidence that UCI occurred.[12] This is a low burden, but the showing "must consist of more than 'mere allegation or speculation.'"[13] "Proof of [UCI] in the air" will not suffice.[14] Second, he must show that the UCI placed an intolerable strain on the public's perception of the military justice system because an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding.[15]

Turning to the first prong of the UCI test, we begin our analysis by adopting the military judge's findings of fact. We find support for them in the record and do not find them to be clearly erroneous.[16] In his letter, Mr. K.H. describes numerous instances of the appellant exposing himself to both his wife and Z.H. and the impact of the appellant's conduct on his family, to include that, "[his] little girl who is still struggling with this whole situation and [is] now in counseling."[17] The letter threatened to complain to senior

---

[8] *United States v. Ayala*, 43 M.J. 296, 300 (C.A.A.F. 1995).

[9] *United States v. Stombaugh*, 40 M.J. 208, 211 (C.A.A.F. 1994).

[10] *United States v. Boyce*, 76 M.J. 242, 248 (C.A.A.F. 2017) (footnote omitted).

[11] *Id.* at 249.

[12] *Id.*

[13] *Id.* (quoting *Salyer*, 72 M.J. at 423).

[14] *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991) (internal quotation marks and footnote omitted).

[15] *Boyce*, 76 M.J. at 248-49.

[16] AE XXXVI.

[17] AE VI at 29.

military and civilian leaders, requested that the Navy reconsider the decision to take no action against the appellant, and indicated "…we aren't going away" and that the video will be sent to "basically anyone who will listen[.]"[18] The defense alleges that the letter was received at a time when "[s]topping sexual misconduct [was] a top priority for the Department of Defense" and after public statements by the President and senior military advisors "universally reflected the position that the military has a problem with sexual assault that must be fixed."[19] After receiving Mr. K.H.'s letter and video, the appellant's commanding officer changed his initial disposition decision from one that would have allowed the appellant to retire honorably at his current grade to preferral of charges to court-martial. Based on these facts alone, unlike the trial court, we find the appellant has met the low burden of presenting facts, which, if true, would show that UCI occurred.

The second prong of the test for UCI shifts the burden to the government to prove beyond a reasonable doubt that "either the predicate facts proffered by the appellant do not exist, or the facts as presented do not constitute [UCI]."[20]

The government argues that there was no apparent UCI because an objective, disinterested observer, fully informed of all the facts and circumstances would not harbor a significant doubt about the fairness of the proceedings. The government relies substantially on affidavits from both the special court-martial convening authority (SPCMCA) and general court-martial convening authority (GCMCA) in which both commanders deny that Mr. K.H.'s letter, or comments from senior military or civilian leaders regarding sexual assault offenses in the military, had *any* influence on their disposition decision of the appellant's case.[21] However, we must consider the totality of all the evidence in determining whether the appearance of UCI exists.[22]

Following his arrest, the appellant's command appointed an investigating officer (IO) to conduct a preliminary inquiry (PI). In the PI, the IO noted he reviewed the police report and a "description of the video evidence" and found them to be inconsistent with the appellant's claim of going outside his home

---

[18] *Id.*

[19] AE XXXVI at 3, 4.

[20] *Boyce*, 76 M.J. at 249 (citing *Salyer*, 72 M.J. at 423) (additional citation omitted).

[21] AE XVII, XVIII.

[22] *Boyce,* 76 M.J. at 248, n.5.

to urinate.[23] The IO recommended that a more comprehensive command investigation be initiated.[24] The video of the appellant exposing himself and masturbating was not an enclosure to the PI.

It was only after the PI was completed that the command learned that—although the appellant was convicted by Rhode Island of indecent exposure/disorderly conduct—his conviction did not result in any confinement, nor did it require him to register as a child sex offender. Additionally, the initial disposition decision was made without having provided the victim or her parents an opportunity to provide input. Moreover, no one within the appellant's command saw the video until Mr. K.H. sent a copy with his letter. The video provided compelling graphic visual evidence of the appellant exposing himself and masturbating, both in and out of uniform, while in full view of a 12-year-old child. We find that it was this previously unseen video and Mr. K.H.'s explanation of the full extent of the appellant's misconduct and the harm caused to his family—not Mr. K.H.'s threat to send the video to the media or military and civilian leaders or pressure from the command's military and civilian superiors—that led the command to change course.

The totality of evidence demonstrates that both SPCMCAs[25] and the GCMCA appropriately considered the letter and video as victim input before determining that there was a need to prosecute under the UCMJ to support the "victim's interest in justice and the government's interest in good order and discipline."[26] We are convinced beyond a reasonable doubt that the change in the initial disposition decision was influenced by the letter's explanation of the extent of the appellant's misconduct, the harm his misconduct caused to his victim, and the video's disturbing graphic visual depiction of the appellant indecently exposed and masturbating outside his home in the presence of a 12-year-old child. Based on the facts and circumstances of this case, we are convinced beyond a reasonable doubt that an objective, disinterested observer, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the proceedings.

---

[23] AE VI at 42.

[24] There is no indication in the record as to whether or not a command investigation was initiated.

[25] Prior to preferral of any charges, the original SPCMCA (the appellant's commanding officer) was properly relieved by a successor in command. The successor in command assumed SPCMCA over the appellant and preferred charges to an Article 32, UCMJ, preliminary hearing on 6 January 2016.

[26] AE VI at 30.

### III. CONCLUSION

The findings and sentence as approved by the convening authority are affirmed.

Chief Judge GLASER-ALLEN and Senior Judge MARKS concur.

For the Court

R.H. TROIDL
Clerk of Court