*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, KISOR, and de GROOT
Appellate Military Judges

———————————————

**UNITED STATES**
*Appellee*

**v.**

**Jose G. GOMEZVILLALOBOS**
Captain (O-3), U.S. Marine Corps
*Appellant*

**No. 202100215 (f rev)**

———————————————

Decided: 15 April 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Ryan C. Lipton

Sentence adjudged on rehearing 8 November 2023 by a general court-martial tried at Marine Corps Base Camp Lejeune, North Carolina, consisting of a military judge alone. Sentence in the Entry of Judgment: confinement for two months.[1] The military judge credited Appellant with three months of confinement.[2]

———————————————

[1] Appellant elected to be sentenced by military judge.

[2] R. at 813 (the rehearing transcript spans 814 pages, beginning at page 1, and the evidence and appellate exhibits are likewise numbered anew. The original trial transcript was 1070 pages. Citations to the Record in this opinion are to the rehearing record, unless otherwise noted.).

For Appellant:
*Lieutenant Benjamin M. Cook, JAGC, USN*

For Appellee:
*Lieutenant Kevin M. Parker, JAGC, USN* (on brief)
*Lieutenant Colonel Candace G. White, USMC*

Senior Judge KISOR delivered the opinion of the Court, in which Chief
Judge HOLIFIELD and Judge de GROOT joined.

————————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

————————————————

KISOR, Senior Judge:

This case is before us a second time.[3] This Court has continuing jurisdiction over this case.[4] Appellant was convicted, contrary to his pleas, of one specification of conspiracy to distribute a controlled substance, two specifications of making a false official statement, and one specification of conduct unbecoming an officer, in violation of Articles 81, 107, and 133, Uniform Code of Military Justice (UCMJ) respectively. He was initially sentenced to three months of confinement and a dismissal. We set aside Appellant's conviction for conspiracy to distribute a controlled substance.[5] We affirmed Appellant's convictions for false official statement and conduct unbecoming an officer and remanded the case to the Judge Advocate General for a rehearing on sentence.[6] Appellant was subsequently sentenced to two months of confinement at the sentencing rehearing. This appeal followed.

Appellant asserts a single assignment of error raised pursuant to *United States v. Grostefon*: whether the convening authority's staff judge advocate

---

[3] *United States v. Gomezvillalobos*, No.202100215, 2022 CCA LEXIS 729 (N-M. Ct. Crim. App. Dec. 20, 2022) (unpublished), *rev. denied,* 83 M.J. 270 (C.A.A.F. 2023).

[4] *See United States v. Boudreaux,* 28 M.J. 181, 182 (C.M.A. 1989).

[5] *Gomezvillalobos*, 2022 CCA LEXIS 729, at *2.

[6] *Id.*

committed actual or apparent unlawful command influence by transferring Appellant's trial defense counsel to a position under her supervision.[7] We find no prejudicial error and affirm.

## I. BACKGROUND

The facts surrounding Appellant's general court-martial are fully set forth in our prior opinion, and need not be repeated in full here.[8] In summary, we reversed Appellant's conviction for conspiracy to distribute a schedule I drug and dismissed that charge.[9] We affirmed guilty findings for two false official statements for lying to agents of the Naval Criminal Investigative Service and also affirmed a finding of guilty for conduct unbecoming an officer for impersonating an investigating officer.[10] We set aside the sentence of three months' confinement and a dismissal, and authorized a rehearing on sentence.[11]

The sentencing proceedings upon rehearing were lengthy, with numerous motions litigated. Relevant here, Appellant was represented by Captain (Capt) B and Lieutenant Colonel (LtCol) G. One of the motions alleged that unlawful command influence (UCI) occurred when Capt B was transferred from the defense services office to the legal assistance office, as Capt B then reported to Colonel (Col) P, the officer who was serving as the staff judge advocate for the convening authority in Appellant's case.[12] The military judge denied the motion, making detailed findings of fact and conclusion of law.[13] After the military judge denied Appellant's motion, Capt B moved to withdraw from representing Appellant, asserting a conflict of interest.[14] The military judge denied that motion as well. The military judge found that, because there was no support for the conclusion that a conflict existed, there was no good cause for Capt B to withdraw.[15] Ultimately, Appellant "reluctantly" agreed to release Capt B

---

[7] 12 M.J. 431 (C.M.A. 1982).

[8] *Gomezvillalobos*, 2022 CCA LEXIS 729, at *2–8.

[9] *Id.* at *24–25.

[10] *Id.* at *2–8 (Appellant had contacted the ex-husband of his ex-girlfriend in connection with a property dispute, and asserted he was conducting a formal investigation).

[11] *Id.* at *24–25.

[12] App. Ex. VIII.

[13] App. Ex. L.

[14] App. Ex. LIII.

[15] R. at 728

from further representation.[16] Appellant continued to be represented by LtCol G.[17]

After that, Appellant requested a forum change and elected to be re-sentenced by a military judge alone.[18] The military judge sentenced Appellant to be confined for one month for the two (then merged) specifications of false official statement and one month for conduct unbecoming of an officer, to be served consecutively.[19] The military judge, however, credited Appellant with three months of confinement, which he had already served.[20] The military judge did not adjudge a dismissal.[21]

## II. DISCUSSION

**The military judge did not err when he found that no UCI existed.**

### 1. Standard of review

We review allegations of UCI de novo, accepting a military judge's findings of fact unless clearly erroneous.[22] The prohibition against UCI is codified in Article 37, UCMJ, part of which presently provides that: "[n]o person subject to [the UCMJ] may attempt to coerce or, by any unauthorized means, attempt to influence the action of a court-martial . . . or any member thereof . . . ."[23] Under the statute, "[n]o finding or sentence of a court-martial may be held

---

[16] R. at 730.

[17] R. at 47.

[18] R. at 658.

[19] R. at 813 (Appellant had previously been sentenced to three months' confinement and served it; so the sentence to two months' confinement cannot have resulted in any further loss of freedom).

[20] R. at 813.

[21] R. at 813.

[22] *See United States v. Gilmet,* 83 M.J. 398 (C.A.A.F. 2023); *United States v. Barry*, 78 M.J. 70, 77 (C.A.A.F. 2018).

[23] Article 37(a)(3), UCMJ; 10 U.S.C. § 837(a)(3).

incorrect on the ground of a violation of this section unless the violation materially prejudices the substantial rights of the accused."[24] This is commonly understood as "actual" UCI.[25]

There is also a line of caselaw, predating the present version of Article 37, standing for the proposition that unlawful command influence may be "actual," "apparent," or both.[26] Apparent unlawful command influence exists where the unlawful command influence places an intolerable strain on the public's perception of the military justice system because an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding.[27] In *United States v. Gilmet*, the Court of Appeals for the Armed Forces (CAAF) explicitly declined to resolve whether or how the recent amendments to Article 37 affect the CAAF's apparent UCI jurisprudence.[28] Absent clearer guidance, and in aid of judicial efficiency, we will address both actual and apparent UCI.

The defense has the initial burden of raising the issue of UCI. The initial burden of showing potential UCI is low, but it is more than mere allegation or speculation.[29] The evidentiary standard is "some evidence."[30] At trial, the accused must show facts which, if true, constitute UCI, and that the alleged UCI

---

[24] Article 37(c), UCMJ, 10 U.S.C. § 837(c).

[25] *See Gilmet,* 83 M.J. at 398.

[26] *See United States v. Boyce*, 76 M.J. 242, 249 (C.A.A.F. 2017); *see also United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006).

[27] *Id.*

[28] *See* 83 M.J. at 401 n. 2. This Court in *United States v. Gattis*, 81 M.J. 748, 754-55 (N.-M. Ct. Crim. App. 2021) stated in dicta that the amendment to Article 37, "seems to vitiate the prior 'intolerable stain/disinterested observer' jurisprudence." But we pause to observe that we doubt that, in amending Article 37, Congress intended to change the law to either permit an intolerable strain on the public's perception of the military justice system, or to prevent military judges, service courts of criminal appeals, and the CAAF from taking actions to remedy circumstances or actions constituting apparent UCI. The CAAF has stated that "[o]nce unlawful command influence is raised, 'we believe it incumbent on the military judge to act in the spirit of the Code by avoiding even the appearance of evil in his courtroom and by establishing the confidence of the general public in the fairness of the court-martial proceedings.'" *Lewis*, 63 M.J. at 415 (citing *United States v. Stoneman*, 57 M.J. 35, 42 (C.A.A.F. 2002)).

[29] *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013) (internal citations omitted).

[30] *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999).

has a logical connection to the court-martial, in terms of its potential to cause unfairness in the proceedings.[31]

Once the issue is raised at the trial level, the burden shifts to the government, which may either show that there was no UCI or that the UCI will not affect the proceedings.[32] When raised on appeal post-trial and the showing of some evidence is made, a reviewing court must be convinced beyond a reasonable doubt that the UCI had no prejudicial effect on the court-martial.[33]

### 2. *There was no UCI in this case*

The military judge made detailed findings of fact and conclusions of law in his written Ruling denying the Defense motion for appropriate relief because of alleged UCI.[34] Appellant apparently does not contend that any of the findings of fact are clearly erroneous. Rather, Appellant states "[t]he [m]ilitary [j]udge's ruling, while very factually detailed, focuses too much on minutiae and misses the big picture."[35] Appellant contends that Col P transferred Capt B to legal assistance, knowing that Capt B would believe the transfer would create a conflict, which could constitute UCI under the CAAF precedent in *Gilmet*.[36] Appellant's reliance on *Gilmet* is misplaced for two reasons. First, in *Gilmet*, the CAAF's decision was heavily based upon its conclusion that the military judge's factual findings were supported by the record.[37] Second, *Gilmet* arose in the context of an Article 62 appeal. Because trial had not yet occurred and the Government's attempts to remedy the taint of the UCI were insufficient, the Government was unable to prove beyond a reasonable doubt that the UCI in that case would not affect the proceedings.[38]

---

[31] *Id.*

[32] *Id.* (additional citation omitted).

[33] *United States v. Douglas*, 68 MJ 349, 354 (C.A.A.F. 2010) (citing *Biagase*, 50 M.J. at 150).

[34] App. Ex. L.

[35] Appellant's Br. at 22.

[36] *Id.* at 22–23.

[37] *See Gilmet,* 83 M.J. at 398 (reversing this Court's overturning of the military judge's dismissal of the case).

[38] *Id.*

a. <u>The military judge's factual findings are supported by the record and are not clearly erroneous; his conclusions of law are not erroneous.</u>

In this case the military judge found, beyond a reasonable doubt, that "[Col P] did not attempt to coerce, or by any unauthorized means, attempt to influence any actions of the court-martial when she directed [Capt B.'s] transfer from defense to legal assistance."[39] Although the military judge found that the transfer could satisfy the low threshold of "some evidence," which shifted the burden to the Government, the military judge ruled that "the [G]overnment has proved beyond a reasonable doubt that the facts 'do not constitute UCI.'"[40] The military judge further explained, "Regardless of the type of UCI alleged – actual or apparent – the allegations cannot be UCI if they do not amount to a violation of a prohibition outlined in the text of Article 37, UCMJ."[41] Because the military judge's predicate findings of fact are not clearly erroneous, and reviewing his ruling de novo, we hold there was no unlawful command influence in this case. We also agree with the military judge's finding that Col P's reassignment of Capt B from defense to legal assistance was a routine matter.[42] Thus, we further hold that this did not place an intolerable strain on the public's perception of the military justice system. Without question, an objective, disinterested observer, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the resentencing proceeding in this case.

b. <u>There was no prejudice.</u>

Although we need not reach this issue because there was no UCI in this case, we observe that because the sentence adjudged at the rehearing included only minimal confinement (which had already been served) and no dismissal, the Government shows beyond a reasonable doubt that any actual unlawful command influence on the part of the convening authority's staff judge advocate, had it existed, had no prejudice on the outcome of the sentencing rehearing. Again, this makes this case readily distinguishable from *Gilmet*, because in that Article 62 context, the Government failed to prove, beyond a reasonable doubt, that its remedial measures to address the UCI would be sufficient to

---

[39] App. Ex. L at 6 (finding of fact "aa").

[40] App. Ex. L at 10.

[41] App. Ex. L at 10.

[42] App. Ex. L at 4–5.

cure the effect of UCI on the case if it had gone forward to a members trial.[43] Here, no remedial measures were necessary or taken; further, the absence of prejudice is proven by the resulting sentence adjudged by the military judge upon rehearing on sentence.[44]

### c. There was no violation of statutory rights under Article 38, UCMJ.

Appellant also contends that the alleged UCI resulted in a violation of his statutory Article 38(b) rights to counsel.[45] The CAAF in *Gilmet* stated (in the Article 62 context), "[a]ccepting the military judge's findings of fact as true, we have no choice but to conclude that Appellant's Article 38(b) rights were violated."[46] Here, (in the Article 66 context), given that the military judge's findings of fact are not clearly erroneous, we easily conclude that Appellant's Article 38(b) rights were *not* violated.[47] Regardless, like the CAAF in *Gilmet*, we would test an error of this nature, if one existed, for prejudice.[48] As stated in part 2(b), *supra*, we conclude, beyond a reasonable doubt, that there is none. Appellant's argument that "the lack of a punitive discharge at the rehearing has more of an effect on this Court's available remedies as opposed to eliminating any prejudice" is remarkably discordant with our review of the record and the outcome of the rehearing in this case. Moreover, Appellant's request that we dismiss with prejudice the remaining charges, which we affirmed in our prior opinion, is perplexingly at odds with the procedural posture of this case.[49]

---

[43]*See Gilmet,* 83 M.J. at 398. In that context the CAAF did not have the benefit of assessing prejudice based on an outcome.

[44] This case is thus distinguishable from this Court's recent opinions in *United States v. Negron*, No. 202300164, 2024 CCA LEXIS 546 (N-M. Ct. Crim. App. Dec. 27, 2024) and *United States v. Draher*, No. 202300163, 2024 CCA LEXIS 547 (N-M. Ct. Crim. App. Dec. 27, 2024) in procedural posture. In those cases, members adjudged convictions at trial, but actual UCI was unquestionably present, which arose from the same facts and allegations as in *Gilmet*. Here, in stark contrast, there was neither UCI nor prejudice.

[45] Appellant's Br. at 25.

[46] *See Gilmet,* 83 M.J. at 398.

[47] *See* App. Ex. L.

[48] *See Gilmet,* 83 M.J. at 398.

[49] Appellant's Br. at 25; *see Gomezvillalobos,* 2022 CCA LEXIS at 729 at *24–25.

Even if we had the power to reverse a conviction we had previously affirmed, we would decline to do so in this case.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the sentence adjudged on rehearing is correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[50]

The sentence is **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[50] Articles 59 & 66, UCMJ, 10 U.S.C. §§ 859, 866.