# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, FEBBO, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant ANGEL M. SANCHEZ**
**United States Army, Appellant**

ARMY 20140735

Headquarters, U.S. Army Maneuver Support Center of Excellence
Jeffery R. Nance, Military Judge
Colonel Robert F. Resnick, Staff Judge Advocate (pretrial)

For Appellant: Lieutenant Colonel Jonathan F. Potter, JA; Captain Amada R. McNeil Williams, JA; Mr. Michael J. Millios, Esquire (on brief); Captain Michael A. Gold, JA; Mr. Michael J. Millios, Esquire (on reply brief).

For Appellee: Major Cormac M. Smith, JA; Captain John Gardella, JA (on brief).

28 March 2017

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of three specifications of violating a general order by engaging in conduct of a sexual nature with basic trainees in violation of Article 92, 10 U.S.C. § 892 (2012) [hereinafter UCMJ]. Contrary to his pleas, the military judge convicted appellant of an additional specification of violating a general order, four specifications of cruelty and maltreatment, and ten specifications of sexual assault and rape, in violation of Articles 92, 93 and 120 UCMJ.[1] The military judge sentenced appellant to a dishonorable discharge, confinement for twenty years,

---

[1] The military judge found appellant not guilty of one specification of violating Army Reg. 600-20, Army Command Policy, (18 Mar. 2008), by wrongfully having a sexual relationship with a trainee, four specifications of cruelty and maltreatment, and five specifications of sexual assault and rape involving four trainees, in violation of Articles 92, 93 and 120, UCMJ.

forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority deferred adjudged and waived automatic forfeitures and approved the remainder of the adjudged sentence.

This case is before us for review pursuant to Article 66, UCMJ.  Appellant raises six assignments of error, three of which warrant discussion but no relief.[2]

---

[2] In one of three remaining assignments of error, appellant complains his defense counsel were ineffective in failing to present his offer to plead guilty to the convening authority.  He supports this claim with a statement, made under penalty of perjury, wherein he asserts he did not have an opportunity to negotiate a plea with the convening authority because of his counsel and coverage of his case by the media.  Had he been given an opportunity to negotiate, he would have offered to plead guilty to violations of Article 128, UCMJ, in lieu of the Article 120 offenses and without a sentence cap.

In response to appellant's submission, government appellate counsel obtained affidavits from appellant's civilian and military trial defense counsel, Mr. EG and Captain (CPT) BS.  Captain BS relays that, prior to trial, he engaged the prosecutor in discussions concerning a plea agreement.  The prosecutor informed CPT BS that the Staff Judge Advocate's (SJA) office would not support any agreement that would remove the Article 120, UCMJ offenses.  Mr. EG explains that he too had conversations with trial counsel concerning an agreement and, if appellant submitted an offer capping confinement at seven years, it would be considered.  Mr. EG presented this proposal, which still required a plea to an Article 120, UCMJ, offense, to appellant.  Appellant considered the proposal overnight and, on the following day, informed both his counsel that he was not interested in the deal.  As a result, his counsel did not submit a formal, written offer to plead guilty.

Under the circumstances of this case, we see no need to order a fact-finding hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).  First, the facts in appellant's statement—even if true—"would not result in relief[.]" *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).  Appellant and counsel agree that no formal offer to plead guilty was submitted to the government.  Appellant, in his statement to this court, admits he was not willing to plead guilty to an Article 120, UCMJ, offense, but rather would only plead guilty to Article 128, assault.  In essence, this confirms his counsel's assertion that appellant rejected a proposal to plead guilty to such an offense.  As the affidavits from counsel make clear, any agreement without a plea to an Article 120, UCMJ, offense, was a non-starter without support of the SJA.  Second, appellant's claim is speculative in that he offers no suggestion as to how an offer to plead guilty on the terms he outlined would have any had chance of success given the number and nature of the charged

(continued . . .)

**BACKGROUND**

Appellant was a military police officer assigned as a drill sergeant at Fort Leonard Wood, Missouri. While assigned to a basic training unit, appellant engaged in a range of sexual misconduct with six female trainees that included oral sex, digital vaginal penetration, groping and touching of trainees' private areas, and sexually harassing and maltreating the trainees by making sexually explicit and provocative comments towards them. Appellant's explicit comments included complimenting trainees' breasts and buttocks, indicating a desire to have a sexual relationship with a trainee, and explicit sexual demands such as "show me your tits." One victim indicated that if she failed to cooperate, appellant would have jeopardized her military status.

Appellant also committed sexual contact with another drill sergeant, by touching her buttocks without her consent. He also sexually harassed the same drill sergeant through sexually provocative comments towards her.

At trial, appellant pleaded guilty to receiving oral sex from two female trainees and having vaginal and oral sex with a third trainee, thereby violating a local general regulation that prohibited engaging in sexual conduct with trainees.

**LAW AND DISCUSSION**

*Transfer of Authority*

Appellant asserts his case is not properly before this court for Article 66 review because the Fort Leonard Wood general court-martial convening authority (GCMCA) reviewed and took action on the case after its transfer to the Fort Leavenworth GCMCA. We find appellant's assertion meritless.

Appellant's court-martial was convened by court-martial convening order number 1, Fort Leonard Wood, Missouri, dated 6 February 2014. The GCMCA was Major General (MG) Leslie Smith. Appellant's court-martial concluded on 24 September 2014.[3]

---

(. . . continued)

Article 120, UCMJ, offenses. This is especially true given the government's position on the terms of any plea agreement. Applying the first and second *Ginn* principles to appellant's unsworn and unsigned submission, we reject appellant's ineffective assistance claim.

[3] On 1 October 2014, the MG Smith deferred automatic forfeitures and waived adjudged forfeitures for the benefit of appellant's family.

On 17 November 2014, the Fort Leonard Wood SJA signed a post-trial recommendation (SJAR) to MG Smith.

On 21 January 2015, defense counsel submitted appellant's post-trial request for clemency in accordance with Rule for Court-Martial [hereinafter R.C.M.] 1105 and 1106. In those matters, appellant raised a legal error asserting MG Smith disqualified himself from participating in appellant's court-martial because he had publically expressed a view prejudging the post-trial review process outcome. Specifically, MG Smith was quoted in a 15 January 2015 Saint Louis Dispatch news article as saying "the guy [appellant] would never have been tried in nine months if he were tried in the civilian system," and appellant "was a leader who took advantage of people" and was "dealt with."

On 23 January 2015, instead of taking action on appellant's post-trial matters, MG Smith sent a written formal request to the Commanding General, Fort Leavenworth, requesting he review and take action in appellant's case in accordance with R.C.M. 1107(a). The stated reason for the request was to ensure the interests of justice and fairness due to the extensive media coverage surrounding appellant's court-martial. The request did not specifically mention the quotes attributed to MG Smith in the news article.

After sending this request, MG Smith changed command and was replaced by BG Kent Savre.

On 10 April 2015, upon learning of the change of command, the Fort Leavenworth Chief of Military Justice (CoJ) sent an e-mail to the Fort Leonard Wood CoJ informing him that since MG Smith was no longer the convening authority, there was no reason for the Fort Leavenworth commander to take action on the case. He stated MG Smith had made the error "as a person," not as the GCMCA, and thus, there was no longer a conflict requiring the need for a "superior GCMCA to take action."

On 1 May 2015, BG Savre took action on appellant's case.

The record contains no documentation from the Fort Leavenworth GCMCA that he either accepted the case or transferred the case back to Fort Leonard Wood. In the absence of documentation otherwise, we assume the GCMCA at Fort Leavenworth took no action on BG Smith's request or in appellant's case. Under these facts, taking no action is the equivalent of not accepting MG Smith's request to review appellant's case. In other words, we find the Fort Leonard Wood GCMCA continued to have jurisdiction in the case under Article 18, UCMJ and thus had the authority take action.

4

We further find MG Smith's comments did not disqualify his successor, BG Savre, from acting on appellant's clemency request. Accordingly, we find no error and find this case properly before this court for Article 66 review.

*Unlawful Command Influence*

Appellant asserts he was deprived of his right to a fair trial due to what he characterizes as "post-trial unlawful command influence." Specifically, he alleges the Chief Judge, U.S. Army Trial Judiciary (USATJ), contacted the military judge during the court-martial after the Chief Judge was contacted by the Chief of the Army's Special Victim's Counsel (SVC) Program. We find this assertion meritless.

We review claims of unlawful command influence and unlawful influence de novo. *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2012) (citations omitted); *see United States v. Stombaugh*, 40 M.J. 208, 213-14 (C.M.A. 1994) (applying the principles of unlawful command influence to issues of unlawful influence). Article 37(a), UCMJ, states: "No person subject to [the UCMJ] may attempt to coerce or, by any unauthorized means, influence the action of a court-martial . . . or any member thereof, in reaching the findings or sentence in any case . . . ."

Our review of unlawful command influence is not limited to actual unlawful influence; we also consider any appearance of unlawful command influence, which may be "as devastating to the military justice system as the actual manipulation of any given trial." *United States v. Ayers*, 54 M.J. 85, 94-95 (C.A.A.F. 2000) (quoting *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991)). The test for the appearance of unlawful command influence is whether "an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006).

When raised on appeal, an appellant bears the initial burden of raising unlawful command influence. Appellant must show: (1) facts, which if true, constitute unlawful command influence; (2) that the proceedings were unfair; and (3) that the unlawful command influence was the cause of the unfairness. *Salyer*, 72 M.J. at 426 (citation omitted). Appellant must present "some evidence" of unlawful command influence beyond mere allegation or speculation. *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002). If an appellant raises some evidence, the burden shifts to the government to rebut the allegation by persuading the court "beyond a reasonable doubt that: (1) the predicate facts do not exist; (2) the facts do not constitute unlawful command influence; or (3) the unlawful command influence did not affect the findings or sentence.:" *Salyer*, 72 M.J. at 423 (citing *United States v. Biagase*, 50 M.J. 143, 151 (C.A.A.F. 1999)).

In this case, during a recess in the middle of the government's case, the military judge received a phone call from the Chief Judge, USATJ. The Chief Judge informed him that she had received a phone call from the Chief of the SVC Program, COL JM, who complained about how the trial judge was setting rules and procedures in court on how the SVC would be heard.

After receiving this phone call, the military judge immediately disclosed on the record that he received the phone call, and that nothing the Chief SVC would say would have an "ounce of influence" on him as to how he conducted the court-martial. He further indicated the Chief SVC's actions were "completely inappropriate," and a potential violation of Article 37, UCMJ, and he would bring him before his court to answer for a possible Article 37 violation if he ever did it again.

The military judge offered both sides the opportunity to question him regarding the phone call. Both sides declined.

Later during the trial, wanting to make the nature of the conversation with the Chief USATJ absolutely clear, the military judge readdressed the issue. He stated that the Chief USATJ merely reported the incident to him and did not seek to influence him in any way. He emphatically stated that the Chief Judge had been a trial judge for many years and knows that he is the "law of the case," and that only the lawyers through their briefs and arguments may seek to influence a trial judge in the execution of their duties. Again, given the opportunity, neither side challenged the military judge.

We find that appellant has failed to present some evidence constituting unlawful command influence. Appellant has suggested that COL JM was acting with the mantle of command authority when he called the Chief Judge and attempted to influence the military judge. We find no facts to support either proposition.

In this case, if he represented anyone, COL JM represented a government witness (through his subordinate SVC), not the government nor the United States Army Legal Services Agency (USALSA). Appellant is incorrect in his assertion that the Chief, SVC, wields the mantle of command authority. Appellant has provided no facts which, if true, would indicate he wielded the mantle of command. Accordingly, we find no unlawful command influence. Moreover, nothing about the interaction between the Chief Judge, USATJ and the military judge suggests she attempted to influence the military judge.

Our resolution of appellant's claim of unlawful command influence does not end the inquiry. While most claims under Article 37, UCMJ, allege the unlawful influence was committed by someone wearing the mantle of command authority, that is not a prerequisite to establishing a claim under Article 37, UCMJ. Both unlawful

command influence and unlawful influence are proscribed by Article 37, UCMJ, but the latter does not require the act be done with the mantle of command authority. The test for unlawful influence is the same as the test for unlawful command influence, except that if an appellant meets his initial burden, the government need only rebut the allegations by a preponderance of the evidence. *Stombaugh*, 40 M.J. at 213-14.

As stated above, appellant fails to present some evidence that the proceedings were affected by any actual or apparent unlawful influence. Moreover, even if appellant met this threshold, we are convinced the government has proven beyond a reasonable doubt that any alleged unlawful influence did not affect the findings or sentence.

*Improper Military Rule of Evidence 413 Evidence*

We review a military judge's decision to admit evidence under Military Rule of Evidence [hereinafter Mil. R. Evid.] 413 for an abuse of discretion. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013). Whether a panel was properly instructed is a question of law we review de novo. *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (citation omitted). Where an instructional error rises to a constitutional dimension, we review the error to determine if it was harmless beyond a reasonable doubt. *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005). "The inquiry for determining whether constitutional error is harmless beyond a reasonable doubt is 'whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence.'" *Id.* (quoting *United States v. Kaiser*, 58 M.J. 146, 149 (C.A.A.F. 2003)).

In *United States v. Hills*, our superior court found it error for the military judge, in a panel trial, to admit charged offenses as Mil. R. Evid. 413 evidence to show an appellant's propensity to commit the charged offenses. 75 M.J. 350, 355 (C.A.A.F. 2016). Our superior court explained that charged offenses are not properly admitted under Mil. R. Evid. 413 to prove a propensity to commit the charged offenses, but also that "muddled accompanying instructions implicate 'fundamental conceptions of justice' under the Due Process Clause by creating the risk the members would apply an impermissibly low standard of proof, undermining both the presumption of innocence and the requirement that the prosecution prove guilt beyond a reasonable doubt." *Id.* at 357 (quoting *United States v. Wright*, 53 M.J. 476, 481 (C.A.A.F. 2000)). *Hills* involved multiple offenses against a single victim that occurred over the span of two hours on one night. *Hills* relied heavily on victim testimony, who was heavily intoxicated during the assault. *Id.* at 352.

We have considered our superior court's decision in *Hills* and find appellant's case distinguishable in many regards. First, appellant elected to be tried by a military judge sitting alone, not a panel. Second, the assaults appellant committed

occurred over months and were perpetrated against multiple victims. Third, in this case, the victims were not intoxicated when appellant committed his offenses, as occurred in the *Hills* case. Here, the crimes occurred in a dry, sober training environment. The victims' memories of the events were clear, and their testimony was unambiguous and compelling as to how appellant perpetrated his acts. For these reasons, this case is distinguishable from the facts and holding in *Hills*.

Although the military judge ruled the government could use propensity evidence in a manner found to be in error in *Hills*, the different forum in this case yields a different result. "Military judges are presumed to know the law and to follow it absent clear evidence to the contrary." *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citing *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997)). We are satisfied the military judge's erroneous view on the admissibility of propensity evidence under Mil. R. Evid. 413 was harmless beyond a reasonable doubt. We find no risk that the military judge would apply an impermissibly low standard of proof concerning either the presumption of innocence or the requirement that the prosecution prove guilt beyond a reasonable doubt. As evidence of this, the military judge found appellant not guilty of one specification of violating Army Reg. 600-20 by wrongfully having a sexual relationship with a trainee, four specifications of cruelty and maltreatment, and five specifications of sexual assault and rape.

In short, we find nothing in the record to suggest the military judge did not hold the government to its burden of proving appellant's guilt beyond a reasonable doubt, or that the military judge applied a lesser standard in adjudicating the charges against appellant.

## CONCLUSION

On consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Judge FEBBO and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court