# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32559**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Troy A. NOLEN**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 21 August 2020

————————————

*Military Judge:* Joseph S. Imburgia.

*Approved sentence:* Bad-conduct discharge, hard labor without confinement for 30 days, and reduction to E-1. Sentence adjudged 12 September 2018 by SpCM convened at Joint Base Pearl Harbor-Hickam, Hawaii.

*For Appellant:* Major Mark J. Schwartz, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel Brian C. Mason, USAF; Major Dayle P. Percle, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and MEGINLEY, *Appellate Military Judges.*

Judge RICHARDSON delivered the opinion of the court, in which Senior Judge POSCH and Judge MEGINLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RICHARDSON, Judge:

A special court-martial composed of officer members convicted Appellant, contrary to his pleas, of one specification of wrongful use of cocaine on divers occasions in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1] The court-martial sentenced Appellant to a bad-conduct discharge, hard labor without confinement for three months, and reduction to the grade of E-1. The convening authority approved 30 days of hard labor without confinement, and otherwise approved the sentence as adjudged.

Appellant raises one issue on appeal pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): whether the findings and sentence must be set aside, and the sole Charge dismissed with prejudice, in order to negate the effects of unlawful command influence by Appellant's chain of command. We also consider two additional issues not raised by Appellant: (1) whether the military judge erred by failing to instruct the court members orally in sentencing to vote on proposed sentences in order of severity, starting from the lightest; and (2) whether Appellant is entitled to relief for facially unreasonable appellate delay. We find no error that resulted in material prejudice to Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant was a maintainer by trade, stationed at Joint Base Pearl Harbor-Hickam. In April 2018, he was assigned to the composite toolkit section, which was responsible for the issue and accountability of tools and equipment for flight line maintenance personnel. Upon random inspection on 14 May 2018, Appellant provided a sample of urine which tested positive for benzoylecgonine (BZE), a metabolite of cocaine, at 3,501 nanograms per milliliter (ng/mL).[2] On 23 May 2018, after Appellant's commander was notified of this positive result, Appellant was ordered to provide another urine sample pursuant to the wing commander's re-inspection policy. That urinalysis also yielded a positive result for the presence of BZE, this time at 8,782 ng/mL.

The same day he was notified of Appellant's first positive urinalysis result, Appellant's commander, Lieutenant Colonel (Lt Col) LV, held an impromptu commander's call in the maintainers' workplace. Lt Col LV told the Airmen they were "piece of s[**]t maintainers" and "we have a couple of people who shove coke up their noses and smoke weed."[3] Lt Col LV changed the work

---

[1] All references in this opinion to the Uniform Code of Military Justice and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The Department of Defense cutoff for a positive BZE result is 100 ng/mL.

[3] The record contains no additional information regarding suspected marijuana use.

schedule from a "Panama schedule" working 15 days a month to a schedule working 5 days a week. Over time, rumor spread in the squadron that Appellant was a maintainer whom the commander suspected had used drugs, and some blamed Appellant for changes the commander made.

During the ensuing investigation for drug use, noncommissioned officers in Appellant's chain of supervision directed his supervisor to keep Appellant busy. At least one supervisor believed the directive included busy work that could be seen by other members in the unit. In addition to his regular duties, Appellant was tasked to clean an old stain from the bathroom floor, sweep baseboards in the hangar, lubricate squeaky chairs, and scrape gum from the laser room floor. Additionally, Appellant was directed to attend appointments on his days off. If he attended an appointment during his duty day, he was instructed to make up the missed time. By 30 July 2018—the date of preferral—Appellant's unit had a new commander.

Appellant raised the mistreatment by his previous commander and chain of supervision at trial and in clemency. He presented the same underlying facts in his motion for appropriate relief under Article 13, UCMJ, 10 U.S.C. § 813, which motion the military judge denied. Although two defense exhibits make some reference to Appellant being treated poorly, this maltreatment was not a cornerstone of the defense sentencing case. It was, however, the foundation for his request for clemency. Echoing the allegations from the Article 13, UCMJ, motion, Appellant's trial defense counsel specifically requested the convening authority reduce the amount of hard labor without confinement and suspend the reduction in rank. Appellant's clemency letter only briefly addressed the maltreatment issues. In the addendum to his staff judge advocate recommendation, the staff judge advocate stated, "I have reviewed the attached clemency matters submitted by the defense. There is evidence supporting the accused's claims that he was treated unfairly prior to his trial. Consequently, I recommend that you disapprove the hard labor without confinement." The convening authority instead reduced the sentence to hard labor without confinement from three months to 30 days.

## A. Unlawful Command Influence

For the first time on appeal, Appellant frames the conduct by his commander and chain of supervision as unlawful command influence. Appellant argues he "was treated as if he were a guilty [A]irman—even before his court-martial began" and "[t]his had a negative impact on [his] ability to seek out character witnesses within the squadron, as members of the squadron were nervous to even talk about what was going on in the squadron and Appellant's maltreatment." He states he is deserving of relief because he "was maltreated and this maltreatment had a detrimental effect on his court-martial." Appellant specifically requests that his conviction and sentence be set aside. He cites

to documents in a motion to attach he filed; however, this court denied that motion and consequently will not consider those documents.

### 1. Law

Article 37(a), UCMJ, prohibits unlawful command influence. 10 U.S.C. § 837(a). Attempts to interfere with potential defense witnesses is a form of unlawful command influence. *United States v. Douglas*, 68 M.J. 349, 354 (C.A.A.F. 2010). "Allegations of unlawful command influence are reviewed de novo." *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013) (citations omitted). "Two types of unlawful command influence can arise in the military justice system: *actual* unlawful command influence and *the appearance of* unlawful command influence." *United States v. Boyce*, 76 M.J. 242, 247 (C.A.A.F. 2017). Unlike actual unlawful command influence, a meritorious claim of an appearance of unlawful command influence does not require prejudice to an accused. *Id.* at 248.

"On appeal, the accused bears the initial burden of raising unlawful command influence. Appellant must show: (1) facts, which if true, constitute unlawful command influence; (2) that the proceedings were unfair; and (3) that the unlawful command influence was the cause of the unfairness." *Salyer*, 72 M.J. at 423 (citation omitted). While the initial burden of showing "some evidence" is low, it is higher than mere allegation or speculation. *Id.* (quoting *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002)).

"Once an issue of unlawful command influence is raised by some evidence, the burden shifts to the government to rebut an allegation of unlawful command influence by persuading the Court beyond a reasonable doubt that (1) the predicate facts do not exist; (2) the facts do not constitute unlawful command influence; or (3) the unlawful command influence did not affect the findings or sentence." *Id.* (citing *United States v. Biagase*, 50 M.J. 143, 151 (C.A.A.F. 1999)). If the Government fails to rebut the appellant's factual showing, it may still prevail if it proves "beyond a reasonable doubt that the unlawful command influence did not place 'an intolerable strain' upon the public's perception of the military justice system and that 'an objective, disinterested observer, fully informed of all the facts and circumstances, would [not] harbor a significant doubt about the fairness of the proceeding.'" *Boyce*, 76 M.J. at 249–50 (quoting *Salyer*, 72 M.J. at 423) (internal quotation marks omitted).

### 2. Analysis

We find Appellant met his initial showing of "some evidence" of apparent unlawful command influence. *See id.* at 249. Appellant was labeled as someone who used drugs and should be punished. One could perceive that attitude as

inconsistent with providing support for Appellant's defense at trial. The Government at trial conceded a "perception problem" while arguing the lack of intent to punish.

Nonetheless, we conclude that the evidence of apparent unlawful command influence was rebutted by the Government and there was no intolerable strain upon the public's perception of the military justice system beyond a reasonable doubt. The record provides no indication that any potential witness refused to provide Appellant a character statement or otherwise cooperate in his defense as a result of leadership's actions. On the contrary, during findings three Airmen from his unit testified on Appellant's behalf. Appellant presented affidavits from those same Airmen in his unit on the Article 13, UCMJ, motion and in clemency. During presentencing, Appellant entered seven character letters from Airmen in his unit.[4] Notably, none of these Airmen stated they interpreted the prior commander's words as discouraging participation in Appellant's defense. While Appellant may have felt he could not request character letters from other Airmen, nothing before us suggests he tried and was refused. We conclude these facts demonstrate that the Government met its burden to demonstrate beyond a reasonable doubt that no fully informed, disinterested, objective observer would doubt the fairness of Appellant's court-martial. *Id.* at 249–50 (citations omitted).

## B. Instruction on Voting Procedures in Sentencing

### 1. Additional Background

The subject of providing mandatory instructions on sentencing was not specifically addressed at Appellant's court-martial. The military judge alluded to giving counsel for both parties a copy of his draft instructions on sentencing before holding a Rule for Courts-Martial (R.C.M.) 802 session with them. Afterwards, the military judge told counsel he sent them what he believed would be the final draft; counsel for both sides told the military judge they had no objections. After hearing counsel argue on sentence, but before receiving procedural instructions on voting, several members had questions. The military judge repeated or gave additional instructions in response to those questions. He then continued providing the instructions orally; he became sidetracked while reading the procedural instructions on voting, specifically the responsibilities of the junior member:

> [Military Judge (MJ)]: . . . When you have completed your discussion, then any member who desires to do so may propose a sentence. You do that by writing out on a slip of paper a complete sentence. The junior member—who I think I said yesterday was

---

[4] Three of the seven Airmen had also testified at trial.

5

Lieutenant [M]; and as it turns out, it is Lieutenant [S]. But because you are sitting on that side and you did it yesterday, I am just going to keep that responsibility of you even though you are technically junior by 30 minutes or whatever it was.[5] So the junior will collect and count the votes, provide that count to the president, who will then essentially count those votes as well and double check them.

Now, where there is a proposal of a sentence, once that happens prior to the voting on that sentence, *you should as the president arrange them in the order the most lenient to the most severe.*

(Emphasis added).

The military judge then went through the sentencing worksheet with the members:

MJ: Ma'am, when you are looking at that document, you are going to see basically the most lenient punishment is no punishment, and then it goes down through the punitive discharge as defense counsel commented on during her argument. I would suggest that *that is probably a good way rank order from lenient to severe*, if that makes sense.

[President (PRES)]: Yes, sir.

MJ: So when you receive these punishment proposals that are essentially going to be written out on a slip of paper and handed to you, *you then will open the paper up, look at it, rank order them, and then you would then conduct a vote by the rest of the members*. The members would vote by secret-written ballot, provide all their ballots to the junior member – well, the second junior member, Lieutenant [M], and then you would then count those votes on that sentence. Then the president would then check that vote. *Once you have come to your concurrence of two-thirds of you or four of you, since there are six people, then you have reached your sentence*. Do you understand that?

PRES: Yes, sir.

MJ: Any questions or concerns by any of the members on that process? Negative response from all members.

_____

[5] During voir dire, the military judge ascertained that the two most junior members graduated from the United States Air Force Academy on the same day, resulting in their relative rank determined by alphabetical order.

(Emphasis added).

After providing instructions on the possibility of reconsideration, the military judge asked:

> MJ: Counsel, do you object to any of the instructions that I gave or request additional instructions?
>
> [Assistant Trial Counsel]: No, Your Honor.
>
> [Defense Counsel]: No, Your Honor.
>
> MJ: Do the members have any questions at all about the instructions? Again, I did see some typos that I need to correct; and then once I get those done, I will work with the case paralegal to get those to you through the bailiff. So probably in about two or three minutes, those will be brought to you.

The military judge then discussed the upcoming lunch hour before he closed the court and conducted a brief Article 39(a), UCMJ, 10 U.S.C. § 839(a), session. The members had been deliberating for 59 minutes when the military judge opened the court:

> MJ: Members, my apologies for breaking in on your closed-session deliberations. I need to clarify two things for you, and then send you back in there to continue deliberations.
>
> . . . I have to also capture on the record the fact that I am giving you the sentencing instructions.

After the bailiff handed to the members their own copy of the written sentencing instructions:

> MJ: With that, I do intend to send you back in to your closed-session deliberations now that you have the written instructions. Let me ask though: Are there any questions or concerns or do you need a lunch break at this time? That is an affirmative on a lunch break?
>
> PRES: Yes, sir. We have already deliberated and are ready.
>
> MJ: Well, I want you to at least make sure you have the written instructions.
>
> PRES: Understood.
>
> MJ: Take a little bit more time. Make sure you are reading and following those instructions; and then if you are ready—whenever you are ready, you can come back out.
>
> PRES: Then recommend a comfort break, ten minutes.

7

MJ: Ten minutes?

PRES: Yes, sir.

MJ: I will tell you what, let's take fifteen. I will—I should be done by then with my other hearing.

PRES: Yes, sir.

The court recessed for 14 minutes, then opened with all parties present.

MJ: . . . During the recess, did anybody think of anything that they want to ask or request? Negative response from all members.

With that, we will then close again for your closed-session deliberations. I will tell you that if you have already reached a decision, you don't have to spend a lot of time, but I would like for you to at least go back in there and read through the instructions now that you have your own copy of it. Make sure that you are not missing anything; and then once you are absolutely sure of the sentence, then let the bailiff know.

PRES: Sir, we have already read through the instructions again, and we are competent.

MJ: During the recess?

PRES: Yes, sir.

MJ: Very well. I want to still give you some time because you shouldn't have been discussing that amongst yourselves in the break, so I want to give you some time to go back and at least discuss it. If it takes you a minute that is fine; if it takes longer that's fine. I want to give you—just for fairness to both sides— the opportunity to at least discuss the instructions now that you have them in writing.

PRES: Yes, sir.

The military judge asked counsel in the next Article 39(a), UCMJ, session whether they had "any concerns at all procedurally with what is occurring." Trial defense counsel asked for "some kind of confirmation that [the members] have had enough time, whatever that may be, to discuss the instructions, read them, and come up with an appropriate verdict . . . ." The military judge opened the court and asked the members whether they discussed the case during the recess; they answered in the negative. He then asked the president follow-up questions about reading the instructions over the recess. She replied, "Before we came back in, I asked 'Did everyone have a chance to read the instructions?' The answer was 'Yes,' and then we came back in." The president stated no

additional discussion occurred, and answered in the negative when the military judge asked her whether she asked the rest of the members whether seeing the written instructions would change their vote. Neither trial nor defense counsel had any follow-up questions. After the military judge reviewed the sentence worksheet, the president announced the sentence of the court.

The following paragraph was in the written instructions: "You then vote on the proposed sentences by secret written ballot. All must vote; you may not abstain. Vote on each proposed sentence in its entirety, beginning with the lightest, until you arrive at the required concurrence, which is two-thirds or 4 members." The military judge did not read this paragraph to the members; instead, he skipped from instructing about the junior member collecting proposed sentences to the junior member collecting and counting the votes. He circled back to instruct the president to arrange the proposed sentences in order of severity, but he did not orally instruct the members in sentencing to vote on the proposed sentences in order from least to most severe.

**2. Law**

Rule for Courts-Martial 1005 requires the military judge give members appropriate instructions on sentence "orally on the record in the presence of all parties and the members." R.C.M. 1005(a), (d). Written copies of the instructions "*may* be given to the members for their use during deliberations." R.C.M. 1005(d) (emphasis added). R.C.M. 1005(e)(3) requires the military judge instruct on the process for deliberation and voting set out in R.C.M. 1006. "All members shall vote on each proposed sentence in its entirety beginning with the least severe and continuing, as necessary, with the next least severe, until a sentence is adopted by the concurrence of the number of members required under subsection (d)(4) of this rule." R.C.M. 1006(d)(3)(A).

"The adequacy of a military judge's instructions is reviewed de novo." *United States v. MacDonald*, 73 M.J. 426, 434 (C.A.A.F. 2014) (citation omitted). Whether an accused waived an issue is a question of law reviewed de novo. *See United States v. Ahern*, 76 M.J. 194 (C.A.A.F. 2017). "Failure to object to an instruction or to omission of an instruction before the members close to deliberate on the sentence constitutes waiver of the objection in the absence of plain error." R.C.M. 1005(f). The United States Court of Appeals for the Armed Forces (CAAF) has interpreted similar "waiver" language in the context of findings instructions instead to mean "forfeiture."[6] *See United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020); R.C.M. 920(f).

---

[6] "We have held that R.C.M. 920(f)'s waiver rule is inapplicable to certain mandatory instructions such as reasonable doubt, the elements of the offenses, and affirmative

"Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right. Stated another way, [a] forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law." *United States v. Rich*, 79 M.J. 472, 475 (C.A.A.F. 2020) (internal quotations and citations omitted.)

A valid waiver leaves no error to correct on appeal; we review forfeited issues for plain error. *See id.* at 476. In reviewing for plain error, courts consider whether an appellant demonstrated (1) there is error; (2) the error is clear, plain or obvious; and (3) the error resulted in material prejudice to the accused's substantial rights. *See United States v. Easterly*, 79 M.J. 325, 327 (C.A.A.F. 2020) (citing *United States v. Grier*, 53 M.J. 30, 34 (C.A.A.F. 2000)); Article 59(a), UCMJ, 10 U.S.C. § 859(a).

Court members are presumed to follow the military judge's instructions absent evidence to the contrary. *See United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000) (citations omitted).

**3. Analysis**

Whether the military judge would instruct the members on voting procedures in accordance with R.C.M. 1006 was never discussed at trial. The military judge prepared instructions that included the required instructions, and neither party raised an objection. Failure to notice that the military judge failed to read a small portion of these uncontested instructions can hardly be deemed an "intentional relinquishment or abandonment of a known right." *Rich*, 79 M.J. at 475.

The CAAF has made clear that the Courts of Criminal Appeals have discretion, in the exercise of their authority under Article 66, UCMJ, 10 U.S.C. § 866, to determine whether to apply waiver or forfeiture in a particular case, or to pierce waiver or forfeiture in order to correct a legal error. *See, e.g., United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018) (quoting *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001)); *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016). Thus, even if Appellant waived this issue, this court must determine whether an error exists that merits piercing his waiver. *See Hardy*, 77 M.J. at 443.

The military judge erred when he failed to instruct the members orally regarding the order of voting on proposed sentences. Moreover, the members did

---

defenses. Similarly, we hold that R.C.M. 1005(f)'s rule of waiver does not serve to forfeit review of this issue. The military judge bears the primary responsibility for ensuring that mandatory instructions . . . are given and given accurately." *United States v. Miller*, 58 M.J. 266, 270 (C.A.A.F. 2003) (citation omitted).

not have a written version of the military judge's instructions until after they stated that they had reached their decision on sentence. The military judge ameliorated his error by affirmatively requiring the members to review his written instructions. He advised them to "[m]ake sure you are reading and following those [written] instructions," "[m]ake sure that you are not missing anything," and "I want to give you—just for fairness to both sides—the opportunity to at least discuss the instructions now that you have them in writing." After a break, the president affirmed that all members had reviewed the written instructions and they were ready to announce their sentence.

Appellant has not claimed any prejudice from the plain error, and we find none. The members read the written instructions, which included all mandatory instructions for the procedure for voting on sentence. That the members did not have questions or reconsider their sentence is not surprising: the military judge orally explained the requirement to order proposed sentences from least severe to most severe. Moreover, in this case we can do more than presume the members followed the military judge's instructions; we have evidence they read the written sentencing instructions before announcing the sentence.

**C. Post-Trial Delay**

Appellant's case was docketed with this court on 28 December 2018. Appellant's counsel requested four enlargements of time to file his brief; all were granted over government opposition. Appellant filed his assignment of error 207 days later on 23 July 2019. The same day, Appellant filed a motion to attach, which the Government opposed on 29 July 2019. The Government filed an answer brief to Appellant's assignments of error on 21 August 2019. This court received no additional filings from Appellant.

The CAAF established a presumption of facially unreasonable delay when Courts of Criminal Appeals do not render a decision within 18 months of docketing. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Where there is such a delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review; and (4) prejudice to the appellant. *Moreno*, 63 M.J. at 135 (citations omitted). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id*. at 136 (citing *Barker*, 407 U.S. at 533).

However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). In *Moreno*, the CAAF identified three types of cognizable prejudice for purposes of an Ap-

pellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–39 (citations omitted). In this case, we find no oppressive incarceration nor impairment of the Defense at a rehearing. *See id.* at 140. As for anxiety and concern, the CAAF has explained "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* Appellant has articulated no such particularized anxiety in this case, and we discern none.

We find neither qualifying prejudice from the delay nor a particularly egregious delay here. *See Toohey*, 63 M.J. at 362. This court is issuing its opinion two months from the *Moreno* date, and after finding error that was not identified by Appellant. Appellant has neither demanded speedy appellate review nor asserted that he is entitled to relief for appellate delay. Accordingly, we do not find the delay so egregious as to adversely affect the perceived fairness and integrity of the military justice system. *See id.*

Recognizing our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.

## II. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court